08 CV 01339

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
LYON FINANCIAL SERVICES, INC.,                :     08- Civ._____
d/b/a U.S. BANK PORTFOLIO SERVICES,   :
for the benefit of U.S. BANK NATIONAL     :
ASSOCIATION, as Trustee,                           :
                                                                          :
                                                      Plaintiff,    :
                                                                          :
                       -against-                                 :
                                                                          :
RONALD LISSAK,                                         :
                                                                          :
                                                      Defendant. :
                                                                          :
------------------------------------------------------------ X

## COMPLAINT

Plaintiff, Lyon Financial Services, Inc. d/b/a U.S. Bank Portfolio Services, for the benefit of U.S. Bank National Association, as Trustee, by and through its undersigned attorneys, Sheppard, Mullin, Richter & Hampton LLP, as and for its Complaint, alleges as follows:

### I.

### PRELIMINARY STATEMENT

1.      In order to induce DVI Financial Services, Inc. ("DVI") to enter into over one million dollars ($1,000,000) worth of leases with Englewood PET Associates, LLC ("Englewood") and Adirondack PET Associates, LLC ("Adirondack"), defendant personally guaranteed the leases, naming DVI as the beneficiary of the guaranties. In order to further induce plaintiff, as successor servicer for the leases, to compromise its right to (i) receive immediate payment of over thirty-nine million dollars ($39,000,000) under the Englewood and

Adirondack leases, and various other leases, and (ii) enter into a settlement agreement with Englewood, Adirondack and certain other related borrowers, defendant reaffirmed his obligations under the personal guaranties. However, despite the fact that those guaranteed payments are now due and owing to plaintiff, as successor servicer to DVI, defendant is refusing to honor the explicit obligations contained in his written guaranties. Accordingly, plaintiff brings this action for necessary and appropriate relief.

## II.

## THE PARTIES

2.  Plaintiff Lyon Financial Services, Inc. d/b/a U.S. Bank Portfolio Services ("USBPS" or "Plaintiff"), for the benefit of U.S. Bank National Association, as Trustee, is a Minnesota corporation with its principal place of business at 1310 Madrid Street, Marshall, Minnesota 56258.

3.  Upon information and belief, Defendant Ronald Lissak ("Lissak" of "Defendant"), is an individual who resides at 68 West 87th Street, New York, New York 10024.

## II.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as the matter in controversy exceeds the sum of $75,000 exclusive of costs and interest and is between citizens of different states.

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 (a)(1) in that a substantial part of the events giving rise to the claims occurred in this District and because the defendant resides in this district.

IV.

## BACKGROUND

A.  **Englewood Leases and Guaranty**

6. On or about May 15, 2000, DVI, as lessor, and Englewood, as lessee, entered into a Master Equipment Lease bearing Lease No. 002625 (the "Englewood Lease").

7. Pursuant to the Englewood Lease, the parties could, from time to time, enter into one or more equipment schedules.

8. On or about May 15, 2000, DVI, as lessor, and Englewood, as lessee, entered into Equipment Schedule No. 001, pursuant to which Englewood leased certain equipment ("Englewood Schedule No. 1").

9. On or about October 4, 2000, DVI, as lessor, and Englewood, as lessee, entered into Equipment Schedule No. 002, pursuant to which Englewood leased certain equipment ("Englewood Schedule No. 2").

10. On or about May 15, 2000, as additional consideration for the financing provided by DVI to Englewood, and expressly to induce DVI to provide such financing, Lissak executed and delivered to DVI an "unconditional continuing guaranty" of Englewood's timely payment of all amounts from time to time payable by Englewood under the Englewood Lease, Englewood Schedule No. 1 and Englewood Schedule No. 2, along with Englewood's other obligations under these lease documents, limited to the amount of $383,300.00, plus interest costs and attorneys fees (the "Englewood Guaranty").

11. Pursuant to the terms of the Englewood Guaranty, Lissak agreed that his liability under the Englewood Guaranty shall not be affected by any new agreements or obligations of Englewood to DVI.

B. **<u>Adirondack Leases and Guaranty</u>**

12. On or about June 28, 2000, DVI, as lessor, and Adirondack, as lessee, entered into a Master Equipment Lease bearing Lease No. 002676 (the "Adirondack Lease").

13. Pursuant to the Adirondack Lease, the parties could, from time to time, enter into one or more equipment schedules.

14. On or about June 28, 2000, DVI, as lessor, and Adirondack, as lessee, entered into Equipment Schedule No. 001, pursuant to which Adirondack leased certain equipment ("Adirondack Schedule No. 1").

15. On or about July 18, 2000, DVI, as lessor, and Adirondack, as lessee, entered into Equipment Schedule No. 002, pursuant to which Adirondack leased certain equipment ("Adirondack Schedule No. 2").

16. On or about June 28, 2000, as additional consideration for the financing provided by DVI to Adirondack, and expressly to induce DVI to provide such financing, Lissak executed and delivered to DVI an "unconditional continuing guaranty" of Adirondack's timely payment of all amounts from time to time payable by Adirondack under the Adirondack Lease, Adirondack Schedule No. 1 and Adirondack Schedule No. 2, along with Adirondack's other obligations under these lease documents, limited to the amount of $450,000.00, plus interest costs and attorneys fees (the "Adirondack Guaranty").

17. Pursuant to the terms of the Adirondack Guaranty, interest shall accrue on the guaranteed amount at a rate of eighteen percent (18%) per annum commencing ten (10) days after the date of demand or notification of default.

18. Pursuant to the terms of the Adirondack Guaranty, Lissak agreed that his liability under the Adirondack Guaranty shall not be affected by any new agreements or obligations of Adirondack to DVI.

C. **The Securitization Facilities**

19. DVI was a commercial finance company that provided financing, either through loans or equipment leases, to healthcare providers, among others.

20. DVI obtained the funds necessary to finance the equipment leases, in part, through securitization facilities, including the securitization facilities more particularly described below.

### 1. The DVI Receivables XII Securitization

21. Pursuant to an Amended and Restated Contribution and Servicing Agreement dated April 1, 2000 (the "DVI XII Contribution and Servicing Agreement") by and between DVI, as Contributor, and DVI Receivables Corp. XII, as Transferor, DVI transferred, assigned and contributed to DVI Receivables Corp. XII, all of DVI's right, title and interest in and to certain specified contracts (the "DVI XII Contracts"), and all assets relating thereto, including the equipment subject to the contracts.

22. Pursuant to an Amended and Restated Subsequent Contract Transfer Agreement dated April 1, 2000 (the "DVI XII Subsequent Contract Transfer Agreement"), by and between DVI Receivables Corp. XII, as Company, and DVI Receivables XII, LLC, as Issuer, DVI Receivables Corp. XII, from time to time, transferred, pledged, assigned and sold to DVI Receivables XII, LLC, all of DVI Receivables Corp. XII's right, title and interest in and to the DVI XII Contracts and assets related to the DVI XII Contracts and assigned its security interest or granted a security interest, in the equipment subject to the DVI XII Contracts.

23. Pursuant to an Amended and Restated Indenture dated April 1, 2000 (the "DVI XII Indenture"), by and between DVI Receivables XII, LLC, as Issuer, and U.S. Bank National

Association, as Trustee (the "Trustee"), DVI Receivables XII, LLC agreed to issue certain Asset Backed Notes (the "DVI XII Notes").

24. Pursuant to the DVI XII Indenture, DVI Receivables XII, LLC, granted to the Trustee, in trust, for the benefit and security of the holders of the DVI XII Notes and the Trustee, all of DVI Receivables XII, LLC's right, title and interest in and to the DVI XII Contracts, and the assets related to the DVI XII Contracts.

25. Pursuant to the DVI XII Indenture, DVI Receivables XII, LLC, assigned to the Trustee, for the benefit of the holders of the DVI XII Notes and the Trustee, its security interest with respect to the equipment subject to the DVI XII Contracts, and all of DVI Receivables XII, LLC's rights in all income, payments and proceeds related to the equipment.

26. Under the DVI XII Subsequent Contract Transfer Agreement, DVI Receivables Corp. XII also conveyed, warranted, assigned, transferred, pledged and granted a security interest to the Trustee, for the benefit and security of DVI Receivables XII, LLC, and to DVI Receivables XII, LLC, in all of DVI Receivables Corp. XII's right, title and interest in and to all equipment, and the proceeds thereof.

27. Englewood Schedule No. 1 and the related interests in the Englewood Lease and the Englewood Guaranty are included in the DVI XII Contracts and assets related to the DVI XII Contracts contributed by DVI to DVI Receivables Corp. XII, pursuant to the DVI XII Contribution and Servicing Agreement, subsequently assigned and sold to DVI Receivables XII, LLC under the DVI XII Subsequent Contract Transfer Agreement, and granted to the Trustee, in trust, for the benefit of the holders of the DVI XII Notes and the Trustee.

28. Adirondack Schedule No. 1 and the related interests in the Adirondack Lease and the Adirondack Guaranty are included in the DVI XII Contracts and assets related to the DVI XII

Contracts contributed by DVI to DVI Receivables Corp. XII, pursuant to the DVI XII Contribution and Servicing Agreement, subsequently assigned and sold to DVI Receivables XII, LLC under the DVI XII Subsequent Contract Transfer Agreement, and granted to the Trustee, in trust, for the benefit of the holders of the DVI XII Notes and the Trustee.

29. Adirondack Schedule No. 2 and the related interests in the Adirondack Lease and the Adirondack Guaranty are included in the DVI XII Contracts and assets related to the DVI XII Contracts contributed by DVI to DVI Receivables Corp. XII, pursuant to the DVI XII Contribution and Servicing Agreement, subsequently assigned and sold to DVI Receivables XII, LLC under the DVI XII Subsequent Contract Transfer Agreement, and granted to the Trustee, in trust, for the benefit of the holders of the DVI XII Notes and the Trustee.

### 2.    The DVI Receivables XIV Securitization

30. Pursuant to an Amended and Restated Contribution and Servicing Agreement dated December 1, 2000 (the "DVI XIV Contribution and Servicing Agreement") by and between DVI, as Contributor, and DVI Receivables Corp. XIV, as Transferor, DVI transferred, assigned and contributed to DVI Receivables Corp. XIV, all of DVI's right, title and interest in and to certain specified contracts (the "DVI XIV Contracts"), and all assets relating thereto, including the equipment subject to the contracts.

31. Pursuant to an Amended and Restated Subsequent Contract Transfer Agreement dated December 1, 2000 (the "DVI XIV Subsequent Contract Transfer Agreement"), by and between DVI Receivables Corp. XIV, as Company, and DVI Receivables XIV, LLC, as Issuer, DVI Receivables Corp. XIV, from time to time, transferred, pledged, assigned and sold to DVI Receivables XIV, LLC, all of DVI Receivables Corp. XIV's right, title and interest in and to the

DVI XII Contracts and assets related to the DVI XIV Contracts and assigned its security interest or granted a security interest, in the equipment subject to the DVI XIV Contracts.

32. Pursuant to an Amended and Restated Indenture dated December 1, 2000 (the "DVI X Indenture"), by and between DVI Receivables XIV, LLC, as Issuer, and U.S. Bank National Association, as Trustee (the "Trustee"), DVI Receivables XIV, LLC agreed to issue certain Asset Backed Notes (the "DVI XIV Notes").

33. Pursuant to the DVI XIV Indenture, DVI Receivables XIV, LLC, granted to the Trustee, in trust, for the benefit and security of the holders of the DVI XIV Notes and the Trustee, all of DVI Receivables XIV, LLC's right, title and interest in and to the DVI XIV Contracts, and the assets related to the DVI XIV Contracts.

34. Pursuant to the DVI XIV Indenture, DVI Receivables XIV, LLC, assigned to the Trustee, for the benefit of the holders of the DVI XIV Notes and the Trustee, its security interest with respect to the equipment subject to the DVI XIV Contracts, and all of DVI Receivables XIV, LLC's rights in all income, payments and proceeds related to the equipment.

35. Under the DVI XIV Subsequent Contract Transfer Agreement, DVI Receivables Corp. XIV also conveyed, warranted, assigned, transferred, pledged and granted a security interest to the Trustee, for the benefit and security of DVI Receivables XIV, LLC, and to DVI Receivables XIV, LLC, in all of DVI Receivables Corp. XIV's right, title and interest in and to all equipment, and the proceeds thereof.

36. Englewood Schedule No. 2 and the related interests in the Englewood Lease and the Englewood Guaranty are included in the DVI XIV Contracts and assets related to the DVI XIV Contracts contributed by DVI to DVI Receivables Corp. XIV, pursuant to the DVI XIV Contribution and Servicing Agreement, subsequently assigned and sold to DVI Receivables

XIV, LLC under the DVI XIV Subsequent Contract Transfer Agreement, and granted to the Trustee, in trust, for the benefit of the holders of the DVI XIV Notes and the Trustee.

### 3.   Bankruptcy of DVI

37.   On August 25, 2003, DVI filed a petition under Chapter 11 of the United States Bankruptcy Code. Pursuant to an order of the United States Bankruptcy Court for the District of Delaware dated February 3, 2004, USBPS was appointed Successor Servicer under both the DVI XII Contribution and Servicing Agreement and the DVI XIV Contribution and Servicing Agreement in place of and instead of DVI.

38.   Pursuant to the terms of both the DVI XII Contribution and Servicing Agreement and the DVI XIV Contribution and Servicing Agreement, after USBPS, as Successor Servicer, learns of a default of any obligor under any DVI XII Contract or DVI XIV Contract, the Servicer is entitled to take all action necessary to recover all damages resulting from such default.

### D.   Settlement Agreement

39.   On or about February 28, 2005, USBPS, as "Successor Servicer" on behalf of the DVI special purpose entities, entered into a settlement and restructuring agreement in order to restructure several leases previously entered into between DVI and several borrowers, including Englewood and Adirondack (the "Settlement Agreement").

40.   Pursuant to the Settlement Agreement, USBPS agreed to, among other things, relinquish its right to the immediate payment of over thirty-nine million dollars ($39,000,000) due and owing by the borrowers as result of defaults on the leases, in exchange for the following payments and conditions.

41. First, certain of the leases were restructured as a single loan evidenced by a secured note for twenty million dollars ($20,000,000) executed by the borrowers that were signatories to the Settlement Agreement (the "A Note").

42. Second, the remaining indebtedness owed by other borrowers who were not signatories to the Settlement Agreement was assumed by the borrowers that (i) were signatories to the Settlement Agreement and (ii) held membership interests in the non-signatory borrowers. The remaining indebtedness was then consolidated into the A Note. However, pursuant to the terms of the Settlement Agreement, the assumption of the indebtedness of a non-signatory did not relieve the non-signatory of its indebtedness or its obligations under the original leases and related documents.

43. Third, the signatory borrowers executed a single unsecured promissory note in favor of USBPS on behalf of the DVI special purpose entities for an amount equal to the difference between the twenty million dollars ($20,000,000) and the total amount of indebtedness (the "B Note"). The total amount of the B Note equaled over nineteen million dollars ($19,000,000).

44. Englewood was a signatory to the Settlement Agreement and, as a result, Englewood Schedule No. 1 and Englewood Schedule No. 2 were restructured and consolidated into the A Note in accordance with the terms of the Settlement Agreement.

45. Adirondack was a non-signatory to the Settlement agreement. However, Integral PET Associates, LLC ("Integral"), an entity that (i) holds a membership interest in Adirondack and (ii) was a signatory to the Settlement Agreement, assumed the indebtedness of Adirondack Schedule No. 1 and Adirondack Schedule No. 2 pursuant to the terms of the Settlement Agreement.

46. Fourth, pursuant to the terms of the Settlement Agreement, Lissak was obligated to "reaffirm his guaranties of the obligations of Englewood PET Associates LLC under it's A Note in a sum not to exceed $383,000 and of the obligation of Adirondack PET Associates, LLC (as assumed by Integral PET Associates, LLC) under it's A Note in a sum not to exceed $450,000."

47. Therefore, as a result of the Settlement Agreement, and in lieu of the immediate payment to USBPS of over thirty-nine million dollars ($39,000,000), Lissak agreed to reaffirm his personal guaranties of the Adirondack and Englewood leases. Specifically, Lissak agreed to reaffirm the Englewood Guaranty for $383,000 and the Adirondack Guaranty for $450,000.

E. **First Amendment to Settlement Agreement**

48. On or about July 25, 2005, USBPS, as "Successor Servicer" on behalf of the DVI special purpose entities, and certain of the borrowers that signed the Settlement Agreement, including Englewood and Integral, entered into an amendment to the Settlement Agreement (the "First Amendment to the Settlement Agreement").

49. The purpose of the First Amendment to the Settlement Agreement was to amend the payment terms of the A Note payments.

50. The terms of the First Amendment to the Settlement Agreement did not alter (i) Lissak's obligations with regard to the Englewood Guaranty and the Adirondack Guaranty, or (ii) Lissak's reaffirmation of the Englewood Guaranty and the Adirondack Guaranty under the Settlement Agreement.

51. Indeed, the First Amendment to the Settlement Agreement specifically stated that except as specifically provided, "the terms and conditions of the [Settlement] Agreement shall remain in full force and effect and are hereby ratified and confirmed by the parties."

Case 1:08-cv-01339-NRB    Document 1    Filed 02/11/2008    Page 12 of 15

F. **Second Amendment to Settlement Agreement**

52. On or about July 1, 2006, USBPS, as "Successor Servicer" on behalf of the DVI special purpose entities, and certain of the borrowers that signed the Settlement Agreement, including Englewood and Integral, entered into a second amendment to the Settlement Agreement (the "Second Amendment to the Settlement Agreement").

53. The Second Amendment to the Settlement Agreement states that the A Notes and B Note were substantially in default as of June 30, 2006.

54. The purpose of the Second Amendment to the Settlement Agreement was to, among other things, amend the payment terms of the A Note and B Note payments.

55. Under the terms of the Second Amendment to the Settlement Agreement, the parties once again reaffirmed the Englewood Guaranty and the Adirondack Guaranty. Specifically, the Second Amendment to the Settlement Agreement states: "The Borrowers, RJM and Ronald J. Lissak hereby reaffirm the Guaranties heretofor executed and delivered to USBPS."

G. **Lissak Refuses to Honor the Guaranties**

56. On or about January 1, 2007, the borrowers ceased making payments under the A Note and the B Note as required by the Settlement Agreement and the amendments thereto, failed to timely cure those defaults, and thereafter made no further payments under the A Notes and the B Note as required under the Settlement Agreement and the amendments thereto.

57. As a result of the Event of Default under the Settlement Agreement, the borrowers' obligations thereunder become immediately due and payable.

58. In addition, as a result of the Event of Default under the Settlement Agreement, the underlying lease agreements, including the Englewood Schedule No. 1, Englewood Schedule No. 2, Adirondack Schedule No. 1 and Adirondack Schedule No. 2 are also in default.

59.  The outstanding amounts due under Englewood Schedule No. 1 and Englewood Schedule No. 2 exceed $383,300.

60.  The outstanding amount due under Adirondack Schedule No. 1 and Adirondack Schedule No. 2 exceed $450,000.

61.  However, despite his obligation to do so, to date, Lissak has refused to make any payments under the Englewood Guaranty or the Adirondack Guaranty.

## V.

## CLAIMS

### A.  Count One: Breach of the Englewood Guaranty

62.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 61 above as if fully set forth herein.

63.  For value received and acknowledged, defendant Lissak executed and delivered the Englewood Guaranty to DVI.

64.  For value received and acknowledged, defendant Lissak reaffirmed his obligations under the Englewood Guaranty under the terms of the Settlement Agreement.

65.  Pursuant to the Englewood Guaranty, Lissak guaranteed Englewood's payment obligations to plaintiff under Englewood Schedule No. 1 and Englewood Schedule No. 2 upon an Event of Default, of up to three hundred and eighty-three thousand, three hundred dollars ($383,300), plus costs and expenses, including reasonable attorneys' fees incurred in enforcing the Englewood Guaranty.

66.  An Event of Default now exists under the Settlement Agreement.

67.  As a result of the Event of Default under the Settlement Agreement, Englewood Schedule No. 1 and Englewood Schedule No. 2 are also in default.

68.	However, despite the fact the default under the Settlement Agreement and under Englewood Schedule No. 1 and Englewood Schedule No. 2, Lissak has refused to pay plaintiff any of the amounts that are due and owing pursuant to the Englewood Guaranty up to the date of this Complaint.

69.	By reason of the foregoing, Lissak owes plaintiff the sum of three hundred and eighty-three thousand, three hundred dollars ($383,300), plus costs and expenses, including reasonable attorneys' fees incurred in enforcing the Englewood Guaranty.

**B.**	**Count Two: Breach of the Adirondack Guaranty**

70.	Plaintiff repeats and realleges the allegations of paragraphs 1 through 69 above as if fully set forth herein.

71.	For value received and acknowledged, defendant Lissak executed and delivered the Englewood Guaranty to DVI.

72.	For value received and acknowledged, defendant Lissak reaffirmed his obligations under the Adirondack Guaranty under the terms of the Settlement Agreement.

73.	Pursuant to the Adirondack Guaranty, Lissak guaranteed Englewood's payment obligations to plaintiff under Adirondack Schedule No. 1 and Adirondack Schedule No. 2 upon an Event of Default, of up to four hundred fifty thousand dollars ($450,000), plus costs and expenses, including reasonable attorneys' fees incurred in enforcing the Adirondack Guaranty.

74.	An Event of Default now exists under the Settlement Agreement.

75.	As a result of the Event of Default under the Settlement Agreement, Adirondack Schedule No. 1 and Adirondack Schedule No. 2 are also in default.

76.	However, despite the default under the Settlement Agreement and under Adirondack Schedule No. 1 and Adirondack Schedule No. 2, Lissak has refused to pay plaintiff

any of the amounts that are due and owing pursuant to the Adirondack Guaranty up to the date of this Complaint.

77. By reason of the foregoing, Lissak owes plaintiff the sum of four hundred fifty thousand dollars ($450,000), plus costs and expenses, including reasonable attorneys' fees incurred in enforcing the Adirondack Guaranty.

## V.
## RELIEF REQUESTED

WHEREFORE, plaintiff requests that judgment be entered against defendants,

i. in the amount of $383,300 against Lissak, plus the costs and expenses, including reasonable attorneys' fees incurred in enforcing the Englewood Guaranty,

ii. in the amount of $450,000 against Lissak, plus the costs and expenses, including reasonable attorneys' fees incurred in enforcing the Adirondack Guaranty, and

iii. granting plaintiff such other further relief which this Court may deem just and proper.

Dated: New York, New York
       February 11, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP

By: _____
Susan Rosenthal (SR 8246)
Lisa Lewis (LL 6695)

30 Rockefeller Plaza, Suite 2400
New York, NY 10112
Tel: (212) 332-3800
Fax: (212) 332-3888

*Attorneys for Plaintiff*